1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11 INOVA DIAGNOSTICS, INC., a California Corporation, | CASE NO. 08-CV-0845 H (JMA) |
| 12  Plaintiff / Counterclaim-Defendant, | **CLAIM CONSTRUCTION ORDER FOR UNITED STATES PATENT NUMBER 7,335,724** |
| 13 vs. | |
| 14 EURO-DIAGNOSTICA AB, a corporation of Sweden; AXIS-SHIELD DIAGNOSTICS LTD, a corporation of Scotland; STICHTING VOOR DE TECHNISCHE WETENSCHAPPEN, an institution of the Netherlands; EURO-DIAGNOSTICA BV, a corporation of the Netherlands, | |
| 19  Defendants / Counterclaim-Plaintiffs. | |

20

21        On August 21, 2009, the Court conducted a claim construction hearing in this matter

22  for U.S. Patent No. 7,335,724. Morgan Chu, David Gindler, Erin McCracken, Amir Naini, and

23  Lucy Stark appeared on behalf of the Plaintiff. Anders Aannestad, Gregory Reilly, and Steven

24  Comer appeared on behalf of the Defendant. After due consideration of the parties' briefing,

25  submitted evidence, and the testimony at the hearing, the Court issues the following claim

26  construction order.

27  / / /

28  / / /

1   **I.     Claim Construction – Legal Standard**

2          The claims of a patent define the scope of the patented invention.  Vitronics Corp. v.

3   Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir. 1996).  In construing claim terms, a court must

4   determine the meaning of any disputed words from the perspective of one of ordinary skill in

5   the pertinent art at the time of filing.  Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir.

6   2005).

7          There is a heavy presumption that claim terms carry their "ordinary and customary"

8   meanings.  CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002).  The

9   "ordinary and customary" meaning is that which a person of ordinary skill in the art would

10  understand the term to mean at the time of invention.  Phillips, 415 F.3d at 1313.  The person

11  of ordinary skill in the art is "deemed to read the claim term not only in the context of the

12  particular claim . . . but in the context of the entire patent, including the specification."  Id.

13  The use of the term in both asserted and unasserted claims may shed light on the meaning of

14  a particular term.  Id. at 1315.  If the meaning of a term is not readily apparent, the court must

15  then look to other intrinsic evidence to define the term.  See id. at 1314.

16         A court must read claims "in view of the specification, of which they are a part."

17  Markman, 52 F.3d 967, 979 (Fed. Cir. 1995).  The specification "is always highly relevant to

18  the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the

19  meaning of a disputed term."  Vitronics, 90 F.3d at 1582.  Although the specification is useful

20  in determining the meaning of a term, a court must not import limitations from the

21  specification into the claim.  Phillips, 415 F.3d at 1323.

22         A court may also consult the prosecution history, if in evidence, during claim

23  construction.  The prosecution history "provides evidence of how the PTO and the inventor

24  understood the patent."  Phillips, 415 F.3d at 1317.  However, the prosecution history is the

25  result of a negotiation between the inventor and the patent office and therefore "often lacks the

26  clarity of the specification and thus is less useful for claim construction purposes."  Id.

27

28

1   Extrinsic evidence "is less reliable than the patent and its prosecution history in

2   determining how to read claims." Phillips, 415 F.3d at 1318.  Indeed, "intrinsic evidence is

3   the most significant source of the legally operative meaning of disputed claim language."

4   Vitronics, 90 F.3d at 1583.  A court may only rely on extrinsic evidence in claim construction

5   when the intrinsic evidence fails to resolve ambiguity in disputed claim terms. Id. at 1583.

6   **II.    Construction of Disputed Terms**

7   The Court's constructions are set forth in the chart below.  The Court first explains the

8   reasoning behind its constructions of certain disputed terms.

9   **A.    "An antigen"**

10  The parties agree that the "antigen" of claim 1 is something to which an antibody binds.

11  (Pl.'s Br. at 8; Def.'s Br. at 6.)  The only dispute is whether the antigen in claim 1 should be

12  construed as a "substance to which antibodies bind" according to the Plaintiff's construction

13  or as "a molecule to which antibodies bind" as in Defendants' construction.

14  The "words of a claim are generally given their ordinary and customary meaning" –

15  "the meaning that the term would have to a person of ordinary skill in the art in question at the

16  time of the invention." Phillips, 415 F.3d at 1312.  In this case, Defendant has not shown that

17  the word "antigen" limits the invention to a molecule.  If such a limitation exists, it stems from

18  language following the term "antigen." See Hitzeman v. Rutter, 243 F.3d 1345, 1349 (Fed.

19  Cir. 2001) (discussing a different antigen "comprised of a cluster of protein molecules").

20  Accordingly, because Plaintiff's construction is an accurate definition of the term and is

21  consistent with all intrinsic evidence, the Court adopts it.

22  **B.    "consisting of a cyclic peptide"**

23  Claim 1 states that the claimed antigen consists of a cyclic peptide.  '724 Patent col.15

24  l.23.  The parties dispute whether this language limits the claim to exactly one cyclic peptide.

25  The Court concludes that it does.  The phrase "consisting of" is "a term of patent convention

26  meaning that the claimed invention contains only what is expressly set forth in the claim.

27  However, while 'consisting of' limits the claimed invention, it does not limit aspects unrelated

28  to the invention." Norian Corp. v. Stryker Corp., 363 F.3d 1321, 1331 (Fed. Cir. 2004)

("Norian I") (citation omitted).  For example, the Norian I court held that, where a patent claimed a kit for preparing a calcium mineral "consisting of" several chemicals, the kit was limited to the claimed chemicals and no other chemicals.  Id.  Because a spatula was not part of the described invention, its presence in such a kit was irrelevant.  Id. at 1332.

Plaintiff argues that, because claim 1 refers to "a cyclic peptide," it is limited to only one such peptide.  In patent construction, the "question whether 'a' or an' is treated as singular or plural depends heavily on the context of its use."  TIVO, Inc. v. Echostar Commc'ns Corp., 516 F.3d 1290, 1303 (Fed. Cir. 2008).  The Federal Circuit typically interprets "a" in its singular sense when "used in conjunction with the closed transitional phrase 'consisting of.'"  Norian Corp. v. Stryker Corp., 432 F.3d 1356, 1359 (Fed. Cir. 2005) ("Norian II"); see also Abbott Labs v. Baxter Pharm. Prods., Inc., 334 F.3d 1274, 1281 (Fed. Cir. 2003) ("[A]lthough 'a' without more generally could mean one or more in an open-ended patent claim, 'a' with 'consisting of' in this case indicates only one member of a Markush group.").  In Norian II, the Federal Circuit held that "the claim language 'consisting of . . . a sodium phosphate,' on its own, suggests the use of a single sodium phosphate."  Norian II, 432 F.3d at 1359.  Here, the '724 Patent claims an antigen "consisting of a cyclic peptide."  col.15 l.23.  As in the Norian cases, this language suggests the use of a single cyclic peptide as the invention itself.  Defendant has not shown why a deviation from this convention is warranted in this case.

Defendant argues that the claim language and specification of the '724 Patent show that "a peptide" refers to one or more peptides.  (Def.'s Br. at 9, Def.'s Resp. Br. at 9.)  As Defendant points out, the specification states that "two or more peptides according to the invention may be part of one oligopeptide."  '724 Patent col.3 l.42-44.  However, the fact that an oligopeptide is created from the combination of two peptides does not mean that, once formed it is two peptides.  Instead, the specification's reference to "one oligopeptide" suggests that it is still one peptide; the "oligo-" prefix designates the origin of the molecule, not its nature.  Accordingly, the specification language relied upon by Defendant does not support its argument that claim 1 is not limited to one peptide.

1    Defendant further argues that, because the peptide of claim 1 is a fragment, and the

2    fragment can be made up of multiple peptides, claim 1 is not limited to one peptide.  (Def.'s

3    Br. at 9-10.)  However, the Court does not agree that the fragment of claim 1 can be multiple

4    peptides.

5    The parties agree that a "cyclic peptide" is a peptide that includes one or more bonds

6    contributing to looped structures in the chain.  (Doc. No. 105 at 2.)  The parties dispute the

7    nature of the bonds that form these loops.  Plaintiff argues that these must be covalent bonds,

8    while Defendant objects to such a limitation.  (Pl.'s Br. at 14; Def.'s Br. at 10.)  Declining to

9    import this limitation into the claim, the Court agrees with Defendant.

10   Plaintiff points out that the specification of the '724 Patent describes only cyclic

11   peptides containing covalent bonds – specifically, disulfide bridges between cysteine side

12   chains.[1]  col.2 l.25-27; col.5 l.60-63.  However, it is improper to confine patent claims to the

13   preferred embodiment.  Phillips, 415 F.3d at 1323 ("[A]lthough the specification often

14   describes very specific embodiments of the invention, we have repeatedly warned against

15   confining the claims to those embodiments.").  Moreover, the specification of the '724 Patent

16   states that bond between cysteine residues is provided as an example.   col. 2 l.25-27

17   ("According to a favourable embodiment the peptide is a cyclic peptide, for instance, due to

18   the presence of a cysteine residue.")  In prosecuting the '724 Patent, the patentee intended that

19   claim 1 encompass "a cyclic peptide, regardless of the means of its cyclization" stating that

20   "the important aspect here is that a cyclic peptide is formed, not how it is formed." (Aannestad

21   Decl. ISO Def.'s Br. Ex. C at 31.)

22   "Even where a patent describes only a single embodiment, claims will not be read

23   restrictively unless the patentee has demonstrated a clear intention to limit the claim scope."

24   Saunders Group, Inc. v. Comfortrac, Inc., 492 F.3d 1326, 1332 (Fed. Cir. 2007).  Here, in light

25   of the open language of the specification and prosecution history, the patentee has not

26

27       [1]  Covalent bonds involve the sharing of electrons between atoms, as opposed to
hydrogen bonds (interaction between positively charged hydrogen atoms and atoms with a
28   negative charge) and van der Waals interactions (caused by temporarily uneven charge
distributions).

demonstrated a clear intention to require covalent bonds.  The Court concludes that, "after reading the entire patent," an ordinary artisan in the relevant field would construe the ordinary meaning of "cyclic peptide" as a sequence of amino acids, that includes one or more bonds that form one or more looped structures in the peptide.  Phillips, 415 F.3d at 1321.

The parties also dispute whether the cyclizing bonds "form one or more looped structures" or "cause the peptide to form one or more looped structures." (Doc. No. 105 at 2.) Defendant objects to Plaintiff's use of the word "cause," arguing that this construction improperly requires that the bond initiate the looping process. (Def.'s Br. at 12-13.) However, Plaintiff disclaims any temporal aspect to its construction.  Accordingly, this dispute turns on a distinction without a difference.  The parties agree that the cyclizing bonds keep the loops in place, and the Court's construction conveys this idea.

## C.    "a fragment"

Claim 1 states that the claimed peptide is "a fragment if filaggrin." '724 Patent col.15 l.23-24.  Plaintiff argues that the term "fragment" is indefinite in the context of claims 1 and 8. (Pl.'s Br. at 17-18.)  Plaintiff requests that the Court defer construction of this term until after it has considered Plaintiff's forthcoming motion for summary judgment on the issue of indefiniteness.  The Court declines to defer construction.  A claim is indefinite "only if reasonable efforts at claim construction prove futile." Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005).  Here, the Court construes this term to possess its "ordinary and customary meaning" – an incomplete part.  Phillips, 415 F.3d at 1312.  This construction is consistent with the prosecution history of the '724 Patent.  The claim that became claim 1 was previously rejected by the patent examiner because it read only upon the full-length filaggrin protein put into cyclic form. (Aannestad Decl. Ex. C at 43.)  In response, the patentee amended the claim to cover fragments, "not the cyclic form of the entire amino acid sequence." (Id. at 48, 50.)  The prosecution history of a patent is relevant to construction, as it "provides evidence of how the PTO and the inventor understood the patent." Phillips, 415 F.3d at 1317.

08cv845

1       The Court's construction does not preclude Plaintiff's indefiniteness argument.

2   Halliburton Energy Servs., Inc. v. M-I LLC, 514 F.3d 1244, 1251 (Fed. Cir. 2008) ("Even if

3   a claim term's definition can be reduced to words, the claim is still indefinite if a person of

4   ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.").

5       **D.**    **"which fragment comprises"**

6       Claim 1 states that the peptide fragment comprises an amino acid sequence derived from

7   filaggrin. '724 Patent col.15 l.25-26. "The transitional term 'comprising' . . . is inclusive or

8   open-ended and does not exclude additional, unrecited elements or method steps." MPEP §

9   2111.03. Under Federal Circuit law, "comprising" is a term of art meaning that "the named

10  elements are essential, but other elements may be added and still form a construct within the

11  scope of the claim." Genentech, Inc. v. Chiron Corp., 112 F.3d 495, 501 (Fed. Cir. 1997). It

12  is well understood to mean "including but not limited to." CIAS, Inc. v. Alliance Gaming

13  Corp., 504 F.3d 1356, 1360 (Fed. Cir. 2007).

14      Defendant's proposed construction for claim 1 states that the fragment "can include

15  amino acids and amino acid sequences in addition to the amino acid sequence of filaggrin."

16  (Doc. No. 105 at 4.) Plaintiff objects to this specific language, suggesting instead that the

17  fragment "must contain what is expressly set forth in the claim, but can include additional

18  elements." (Id.) The Court adopts Plaintiff's construction as it is based directly on the case

19  law interpreting the meaning of "comprising." The parties agree that the fragment may contain

20  elements in addition to an amino acid sequence derived from filaggrin, but the Court declines

21  to elaborate on what additional elements are permissible. As discussed below, the extent to

22  which a fragment may deviate from filaggrin and still fall within the claim is a question of fact

23  for the jury. See PPG Indus. v. Guardian Indus. Corp., 156 F.3d 1351, 1354-55 (Fed. Cir.

24  1998) (holding that whether a substance had a composition "consisting essentially of" listed

25  ingredients was not a matter of claim construction but an infringement issue for the jury).

26  / / /

27  / / /

28  / / /

**E.     "derived from said filaggrin by replacing at least one arginine residue in the amino acid sequence with a citrulline residue"**

Claim 1 states that the claimed fragment comprises an amino acid sequence derived from filaggrin by replacing at least one arginine with a citrulline.  '724 Patent col.15 l.25-28. Plaintiff's construction provides for an amino acid sequence obtained from filaggrin and "changed by substituting at least one arginine residue in the filaggrin sequence with a citrulline residue." (Doc. No. 105 at 5.)  Defendant's construction states that the amino acid sequence "includes an amino acid sequence of filaggrin (SEQ ID NO: 19) with changes including at least one arginine residue substituted by a citrulline residue." (Id.)  Defendant's construction is more open-ended, while Plaintiff's implies that the only permissible change is the arginine-citrulline substitution.  The Court agrees with Defendant on this issue.

The Court first notes that the use of the word "comprises" indicates that the fragment's composition is open-ended – including but not limited to an amino acid sequence derived from filaggrin.  CIAS, 504 F.3d at 1360.  In addition to the language of the claim itself, the patent's specification is "the single best guide to the meaning of a disputed term."  Vitronics, 90 F.3d at 1582.  Here, the Patent's specification confirms Defendant's interpretation:

> To a person skilled in the art it will be apparent that there are a number of possible variations to the present invention as specified by the apended claims. For instance, the peptides mentioned on the formula sheet may also be part of other oligopeptides.  They may be provided at one or both ends with one or more amino acids while also, two or more peptides according to the invention may be part of one oligopeptide.  It is also possible to shorten the peptides by one or more amino acids, provided this does not have a significantly adverse effect on the reactivity.

'724 Patent col.3 l.37-46.  Thus, the specification expressly provides for modification of the amino acid sequence beyond citrullination.

Plaintiff argues that the claim is limited by statement that the sequence is "derived from filaggrin."  Plaintiff contends that "an amino acid sequence cannot be considered to be

'derived' from the parent sequence if it has been changed beyond recognition to something that cannot be recognized as having been originally obtained, actually or theoretically, from the parent sequence." (Pl.'s Br. at 20.) Plaintiff objects to the fact that Defendant's proposed construction places no limit on the extent of changes that may be made to filaggrin sequence. However, Defendant's construction is consistent with the patent language itself. Neither proposed construction specifies the scope of allowable changes. This is appropriate, as the extent to which a fragment may deviate from filaggrin and still fall within the claim is a question of fact for the jury. See PPG Indus., 156 F.3d at 1354-55 (holding that whether a substance had a composition "consisting essentially of" listed ingredients was not a matter of claim construction but an infringement issue for the jury).

### F.    "specifically immunoreactive"

Claim 1 states that the antigen is "specifically immunoreactive with anti-fillagrin antibodies present in the serum of subject suffering from rheumatoid arthritis." '724 Patent col.15 l. 29-31.) Plaintiff argues that the phrase "specifically immunoreactive" requires that the antigen recognize and bind to form complexes "only with anti-filaggrin antibodies present in the serum portion of the blood of individuals suffering from rheumatoid arthritis." 9Doc. No. 105 at 6.) Defendant's construction is less demanding, requiring only that the antigen "preferentially reacts with anti-filaggrin antibodies present in the serum portion of the blood of individuals suffering from rheumatoid arthritis." (Id.) The Court agrees with Defendant.

A patent's specification is "always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Phillips, 415 F.3d at 1315 (quotation omitted). Here, the specification consistently uses the term "specifically" as a matter of degree, not an absolute. For example, it states that the claimed peptide is "suitable for diagnostic research with increased specificity." '724 Patent col.1 l.49-50. It explains that the use of a cyclic peptide enhances "specificity." col.6 l.14-17. It points out that a prior art test is "not very specific." col.1 l.65 - col.2 l.1. Finally, it states that the claimed invention is suitable for "high-specificity testing." col.2 l.54-55. In the context of binding specificity, the specification refers to an "organic compound comprising a

part that is able to compete with a peptide of the invention for binding to an antibody which is specific for said peptide." '724 Patent col.3 l.4-7. Even though this antibody is "specific" for the peptide, the invention relates to another compound that also binds with the antibody. Thus, the specification describes specificity as something that can be increased and enhanced, something that varies from antigen to antigen. This treatment is inconsistent with Plaintiff's construction that specificity equals exclusivity. Under Federal Circuit law, "when a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term by implication." Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc., 262 F.3d 1258, 1271 (Fed. Cir. 2001).

### Conclusion

The Court compliments the parties for their excellent presentations.

IT IS SO ORDERED.

DATED: August 24, 2009

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

- 10 -

08cv845

**CLAIM 1**

(language for which the parties submitted proposed construction in **bold**)

An **antigen consisting of a cyclic peptide** which peptide is **a fragment** of the amino acid sequence of filaggrin (SEQ ID NO: 19) and which fragment **comprises** an amino acid sequence **derived from said filaggrin by replacing at least one arginine residue in the filaggrin amino acid sequence, with a citrulline residue**,

which **antigen is specifically immunoreactive with anti-filaggrin antibodies** present in the serum of subjects suffering from rheumatoid arthritis.

| Claim Language | INOVA Diagnostics | Euro-Diagnostica et al. | Court's Construction |
|---|---|---|---|
| "An **antigen** . . ." | "substance to which antibodies bind" | "a molecule to which antibodies bind" | a substance to which an antibody binds |
| ". . . **consisting of** . . ." | "consisting of" means that the claimed invention contains only what is expressly set forth in the claim and does not exclude additional components that are unrelated to the invention | "consisting of" means that the claimed invention contains only what is expressly set forth in the claim and does not exclude additional components that are unrelated to the invention | "consisting of" means that the claimed invention contains only what is expressly set forth in the claim and does not exclude additional components that are unrelated to the invention<br><br>[The Court adopts the parties' stipulated construction.] |
| ". . . **a cyclic peptide** . . ." | "one peptide, a sequence of amino acids, that includes one or more covalent bonds that cause the peptide to form one or more looped structures" | "a sequence of amino acids that includes one or more bonds forming one or more looped structures" | one peptide, a sequence of amino acids, that includes one or more bonds forming one or more looped structures in the peptide |

| Claim Language | INOVA Diagnostics | Euro-Diagnostica et al. | Court's Construction |
|---|---|---|---|
| ". . . **a fragment** of the amino acid sequence . . ." | the term "fragment" is indefinite in the context of the claim, and as such cannot be construed | "an incomplete part" | an incomplete part |
| ". . . which fragment **comprises** . . ." | "comprises" means that the claimed fragment must contain what is expressly set forth in the claim, but can include additional elements | "comprises" is open-ended, which means the fragment can include amino acids and amino acid sequences in addition to the amino acid sequence of filaggrin | The claimed fragment must contain what is expressly set forth in the claim, but can include additional elements. |
| ". . . amino acid sequence **derived from said filaggrin by replacing at least one arginine residue in the filaggrin amino acid sequence with a citrulline residue** . . ." | "a sequence of amino acids that is obtained from filaggrin and changed by substituting at least one arginine residue in the filaggrin sequence with a citrulline residue" | "the amino acid sequence includes an amino acid sequence of filaggrin (SEQ ID NO: 19) with changes including at least one arginine residue substituted by a citrulline residue" | a sequence of amino acids that is obtained from filaggrin with changes including at least one arginine residue substituted by a citrulline residue |
| ". . . which **antigen is specifically immunoreactive with anti-filaggrin antibodies** present in the serum of subjects suffering from rheumatoid arthritis . . ." | "which antigen recognizes and binds to form complexes only with anti-filaggrin antibodies present in the serum portion of the blood of individuals suffering from rheumatoid arthritis" | "the antigen preferentially reacts with anti-filaggrin antibodies present in the serum portion of the blood of individuals suffering from rheumatoid arthritis" | The antigen preferentially reacts with anti-filaggrin antibodies present in the serum portion of the blood of individuals suffering from rheumatoid arthritis. |

08cv845

**CLAIM 2**

(language for which the parties submitted proposed construction in **bold**)

The **antigen of claim 1** wherein **one arginine is replaced by citrulline**.

| Claim Language | INOVA Diagnostics | Euro-Diagnostica et al. | Court's Construction |
|---|---|---|---|
| "The **antigen of claim 1** . . ." | This claim is dependent upon claim 1, thus incorporating all of the elements of claim 1. | This claim is dependent upon claim 1, thus incorporating all of the elements of claim 1. | This claim is dependent upon claim 1, thus incorporating all of the elements of claim 1. |
| ". . . wherein **one arginine is replaced by citrulline**." | "wherein one arginine is substituted by one citrulline in the filaggrin sequence" | "wherein one arginine is substituted by one citrulline in the filaggrin sequence" | "wherein one arginine is substituted by one citrulline in the filaggrin sequence"<br><br>[The Court adopts the parties' stipulated construction.] |

CLAIM 3

(language for which the parties submitted proposed construction in **bold**)

The **antigen of claim 1** wherein **two or more arginines are replaced by citrulline**.

| Claim Language | INOVA Diagnostics | Euro-Diagnostica et al. | Court's Construction |
|---|---|---|---|
| "The **antigen of claim 1** . . ." | This claim is dependent upon claim 1, thus incorporating all of the elements of claim 1. | This claim is dependent upon claim 1, thus incorporating all of the elements of claim 1. | This claim is dependent upon claim 1, thus incorporating all of the elements of claim 1. |
| ". . . wherein **two or more arginines are replaced by citrulline**." | "wherein two or more arginines are substituted by two or more citrullines in the filaggrin sequence" | "wherein two or more arginines are substituted by two or more citrullines in the filaggrin sequence" | "wherein two or more arginines are substituted by two or more citrullines in the filaggrin sequence"<br><br>[The Court adopts the parties' stipulated construction.] |

**CLAIM 4**

(language for which the parties submitted proposed construction in **bold**)

The **antigen of claim 1** which **contains at least two cysteines**.

| Claim Language | INOVA Diagnostics | Euro-Diagnostica et al. | Court's Construction |
|---|---|---|---|
| "The **antigen of claim 1** . . ." | This claim is dependent upon claim 1, thus incorporating all of the elements of claim 1. | This claim is dependent upon claim 1, thus incorporating all of the elements of claim 1. | This claim is dependent upon claim 1, thus incorporating all of the elements of claim 1. |
| ". . . which **contains at least two cysteines**." | "the antigen has two or more cysteine amino acids" | "the antigen has two or more cysteine amino acids" | "the antigen has two or more cysteine amino acids"<br><br>[The Court adopts the parties' stipulated construction.] |

**CLAIM 8**

(language for which the parties submitted proposed construction in **bold**)

A method to detect rheumatoid arthritis by detecting an autoimmune antibody in the serum of a subject, said method **comprising**:

**contacting the antigen of claim 1** with **said serums**, and detecting the presence or absence of a complex between the antigen and an antibody;

wherein the presence of said complex detects rheumatoid arthritis.

| Claim Language | INOVA Diagnostics | Euro-Diagnostica et al. | Court's Construction |
|---|---|---|---|
| ". . . said method **comprising** . . ." | the accused method must contain every element of the claimed method, but can also include additional, unclaimed elements | the accused method must contain every element of the claimed method, but can also include additional, unclaimed elements | the accused method must contain every element of the claimed method, but can also include additional, unclaimed elements<br><br>[The Court adopts the parties' stipulated construction.] |
| ". . . **contacting** . . ." | "touching" | "touching" | "touching"<br><br>[The Court adopts the parties' stipulated construction.] |
| ". . . **the antigen of claim 1** . . ." | This claim incorporates all of the elements of claim 1. | This claim incorporates all of the elements of claim 1. | This claim incorporates all of the elements of claim 1. |

08cv845

| Claim Language | INOVA Diagnostics | Euro-Diagnostica et al. | Court's Construction |
|---|---|---|---|
| ". . . **said serums** . . ." | "the serum of a subject" | "the serum of a subject" | "the serum of a subject"<br><br>[The Court adopts the parties' stipulated construction.] |

08cv845

**CLAIM 9**

(language for which the parties submitted proposed construction in **bold**)

The **method of claim 8** wherein **the detecting comprises use of an antihuman antibody**.

| Claim Language | INOVA Diagnostics | Euro-Diagnostica et al. | Court's Construction |
|---|---|---|---|
| "The **method of claim 8** . . ." | This claim is dependent upon claim 8, thus incorporating all of the elements claimed in claim 8. | This claim is dependent upon claim 8, thus incorporating all of the elements claimed in claim 8. | This claim is dependent upon claim 8, thus incorporating all of the elements claimed in claim 8. |
| ". . . **the detecting** . . ." | the "detecting" step of claim 8 | the "detecting" step of claim 8 | the "detecting" step of claim 8<br><br>[The Court adopts the parties' stipulated construction.] |
| ". . . **comprises** . . ." | In order to infringe, the accused method must contain every element of the "detecting" claim limitation, but can also include additional unclaimed elements. | In order to infringe, the accused method must contain every element of the "detecting" claim limitation, but can also include additional unclaimed elements. | In order to infringe, the accused method must contain every element of the "detecting" claim limitation, but can also include additional unclaimed elements.<br><br>[The Court adopts the parties' stipulated construction.] |
| ". . . **use of an antihuman antibody**." | "use of an antibody that binds to human antibodies" | "use of an antibody that binds to human antibodies" | "use of an antibody that binds to human antibodies"<br><br>[The Court adopts the parties' stipulated construction.] |

**CLAIM 10**

(language for which the parties submitted proposed construction in **bold**)

The **method of claim 8** wherein **the detecting comprises use of an enzyme-linked immunosorbent assay (ELISA)**.

| Claim Language | INOVA Diagnostics | Euro-Diagnostica et al. | Court's Construction |
|---|---|---|---|
| "The **method of claim 8** . . ." | This claim is dependent upon claim 8, thus incorporating all of the elements claimed in claim 8. | This claim is dependent upon claim 8, thus incorporating all of the elements claimed in claim 8. | This claim is dependent upon claim 8, thus incorporating all of the elements claimed in claim 8. |
| ". . . **the detecting** . . ." | the "detecting" step of claim 8 | the "detecting" step of claim 8 | the "detecting" step of claim 8<br><br>[The Court adopts the parties' stipulated construction.] |
| ". . . **comprises** . . ." | In order to infringe, the accused method must contain every element of the "detecting" claim limitation, but can also include additional unclaimed elements. | In order to infringe, the accused method must contain every element of the "detecting" claim limitation, but can also include additional unclaimed elements. | In order to infringe, the accused method must contain every element of the "detecting" claim limitation, but can also include additional unclaimed elements.<br><br>[The Court adopts the parties' stipulated construction.] |
| ". . . **use of an enzyme-linked immunosorbent assay (ELISA)**." | "use of a test that uses an enzyme, a protein that catalyzes a biochemical reaction, and an antibody or antigen linked thereto" | "use of a test that uses an enzyme, a protein that catalyzes a biochemical reaction, and an antibody or antigen linked thereto" | "use of a test that uses an enzyme, a protein that catalyzes a biochemical reaction, and an antibody or antigen linked thereto"<br><br>[The Court adopts the parties' stipulated construction.] |

**CLAIM 11**

(language for which the parties submitted proposed construction in **bold**)

The **method of claim 8** wherein **the antigen contains at least two cysteines**.

| Claim Language | INOVA Diagnostics | Euro-Diagnostica et al. | Court's Construction |
|---|---|---|---|
| "The **method of claim 8** . . ." | This claim is dependent upon claim 8, thus incorporating all of the elements claimed in claim 8. | This claim is dependent upon claim 8, thus incorporating all of the elements claimed in claim 8. | This claim is dependent upon claim 8, thus incorporating all of the elements claimed in claim 8. |
| ". . . wherein **the antigen contains at least two cysteines**." | "the antigen has two or more cysteine amino acids" | "the antigen has two or more cysteine amino acids" | "the antigen has two or more cysteine amino acids"<br><br>[The Court adopts the parties' stipulated construction.] |

08cv845